1  Mark Brnovich
   Attorney General
2

3  Kara Karlson (029407)
   Assistant Attorney General
4  Linley Wilson (027040)
   Deputy Solicitor General
5  2005 North Central Avenue
   Phoenix, AZ 85004-1592
6  Telephone (602) 542-4951
   Facsimile (602) 542-4385
7
   kara.karlson@azag.gov
8  linley.wilson@azag.gov
   adminlaw@azag.gov
9

10

11  Mary R. O'Grady (011434)
    Emma J. Cone-Roddy (034285)
12  OSBORN MALEDON, P.A.
    2929 North Central Avenue, Suite 2100
13  Phoenix, AZ 85012-2793
    (602)640-9000
14  mogrady@omlaw.com
    econe-roddy@omlaw.com
15
    *Attorneys for Defendant*
16  *Arizona Secretary of State Katie Hobbs*

17              **UNITED STATES DISTRICT COURT**

18             **FOR THE DISTRICT OF ARIZONA**

19
    Voto Latino, Inc., *et al*,
20
                     Plaintiffs,                  Case No: 19-cv-05685-DWL
21
    v.                                            **ARIZONA SECRETARY OF STATE'S**
22                                                **MOTION TO DISMISS**
    Katie Hobbs, in her official capacity as
23  Arizona Secretary of State,
                                                  **(Oral Argument Requested)**
24                   Defendant,

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 3

   I.   PLAINTIFFS LACK STANDING TO CHALLENGE THE ELECTION DAY
       DEADLINE ............................................................................................... 3

   II.  THE ELEVENTH AMENDMENT BARS PLAINTIFFS' CLAIMS..............…..6

   III. PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE
       GRANTED ................................................................................................. 9

        A.    There Is No Right to Vote Early Under the Federal Constitution ........10

        B.    A Twenty-Seven Day Early Voting Period that Includes a
            Requirement for Ballots to be Received by the Close of the Polls Is
            Not an Undue Burden on the Right to Vote..........................................11

        C.    Requiring Voters to Return All Ballots to Elections Officials by
            Election Day Does Not Implicate Procedural Due Process ................14

CONCLUSION ................................................................................................. 16

1

# TABLE OF AUTHORITIES

2

## Cases

3

*ACORN v. Fowler*,
178 F.3d 350 (5th Cir. 1999) ........................................................................ 6

4

5

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ...................................................................................... 10

6

*Ariz. v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1, (2013) .......................................................................................... 9

7

8

*Ariz. Libertarian Party v. Reagan*,
798 F.3d 723 (9th Cir. 2015) ........................................................................ 11

9

*Baker v. Carr*,
369 U.S. 186 (1962) ........................................................................................ 4

10

11

*Black Faculty Ass'n of Mesa Coll. v. San Diego Cmty. Coll. Dist.*,
664 F.2d 1153 (9th Cir. 1981) ........................................................................ 4

12

*Burdick v. Takushi*,
504 U.S. 428 (1992) ........................................................................................ 9

13

14

*Carrington v. Rash*,
380 U.S. 89 (1965) ........................................................................................ 10

15

*Coal. to Defend Affirmative Action v. Brown*,
674 F.3d 1128 (9th Cir. 2012) .................................................................... 7, 9

16

17

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008) ................................................................................ 11, 14

18

*Culinary Workers Union, Local 226 v. Del Papa*,
200 F.3d 614 (9th Cir. 1999) .......................................................................... 6

19

20

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ........................................................................................ 3

21

*Doe No. 1 v. Reed*,
697 F.3d 1235 (9th Cir. 2012) ........................................................................ 3

22

23

*Dudum v. Arntz*,
640 F.3d 1098 (9th Cir. 2011) .................................................................. 10, 14

24

*Ex parte Young*,
209 U.S. 123 (1908) ........................................................................................ 7

25

26

*Fla. State Conference of N.A.A.C.P. v. Browning*,
522 F.3d 1153 (11th Cir. 2008) .................................................................... 14

27

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ........................................................................................ 6

28

*Hunt v. Wash. State Apple Advert. Comm'n,*
432 U.S. 333 (1977) ............................................................................................. 5

*La Asociacion de Trabajadores de Lake Forest v. Lake Forest,*
624 F.3d 1083 (9th Cir. 2010) .......................................................................... 5

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ............................................................................................. 4

*McDonald v. Bd. of Election Comm'rs of Chicago,*
394 U.S. 802 (1969) ........................................................................................... 10

*Mitchell v. L.A. Cmty. Coll. Dist.,*
861 F.2d 198 (9th Cir. 1988) ............................................................................ 7

*Nader v. Brewer,*
531 F.3d 1028 (9th Cir. 2008) .................................................................... 14, 15

*Ohio Democratic Party v. Husted,*
834 F.3d 620 (6th Cir. 2016) ........................................................................... 11

*Pub Integrity Alliance v. City of Tucson,*
836 F.3d 1019, (9th Cir. 2016) ........................................................................ 11

*Raetzel v. Parks/Bellmont Absentee Election Bd.,*
762 F.Supp 1354 (D. Ariz. 1990) ................................................................... 14

*Shelby Advocates for Valid Elections v. Hargett,*
__ F.3d __, 2020 WL 401803 (6th Cir. Jan. 24, 2020) ............................... 6

*Smith v. Pac. Props. and Dev. Corp.,*
358 F.3d 1097 (9th Cir. 2004) .......................................................................... 5

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009) ............................................................................................. 4

*Timmons v. Twin Cities Area New Party,*
520 U.S. 351 (1997) ............................................................................ 10, 11, 14

*Warth v. Seldin,*
422 U.S. 490 (1975) ............................................................................................. 4

*Weber v. Shelley,*
347 F.3d 1101 (9th Cir. 2003) ......................................................................... 11

*Wilde v. United States,*
385 F.Supp.2d 966 (D. Ariz. 2005) ................................................................. 7

*Wright v. Riveland,*
219 F.3d 905 (9th Cir. 2000) ............................................................................ 4

## Statutes

1991 Ariz. Sess. Laws, Ch. 308, § 6, eff. Jan. 1, 1992.........................................................1

52 U.S.C. §10503 .........................................................................................................12

A.R,S § 16-956 ..............................................................................................................1

A.R.S. § 16-142 .............................................................................................................8

A.R.S. § 16-531 .............................................................................................................9

A.R.S. § 16-541 ..........................................................................................................1, 2

A.R.S. § 16-542 ...............................................................................................1, 2,3, 12

A.R.S. § 16-544 .............................................................................................................2

A.R.S. § 16-547…...…………………………………………………………..3, 12, 15

A.R.S. § 16-548 .....................................................................................................passim

A.R.S. § 16-551 .............................................................................................................8

A.R.S. § 16-579 ...........................................................................................................12

A.R.S. § 16-621 .............................................................................................................9

A.R.S. §16-645 .............................................................................................................9

A.R.S. § 19-123 .............................................................................................................1

A.R.S. §§ 16-503 ...........................................................................................................8

Conn. Gen. Stat. § 9-135 ...............................................................................................1

## Constitutional Provisions

Ariz. Const. art. V, § 9.............................................................................................2, 7

U.S. Const. art. I § 4, cl. 1 ............................................................................................9

U.S. Const. art. III, § 2, cl. 1 ........................................................................................3

**INTRODUCTION**

Arizona is a national leader in making early voting convenient and accessible for its voters.  While many states *still* require voters to provide a reason to vote early or absentee, Arizona has had "no-excuse" early voting since 1992.  *Compare* A.R.S. § 16-541 & 1991 Ariz. Sess. Laws, Ch. 308, § 6, eff. Jan. 1, 1992 *with e.g.* Conn. Gen. Stat. § 9-135 (setting strict requirements to vote absentee).  "No excuse" early voting means that *any* Arizona voter can have their ballot delivered to them up to twenty-seven days before the election, allowing any voter to cast his or her ballot in the comfort of his or her own home.  Furthermore, Arizona is one of only a handful of states that has a Permanent Early Voter List ("PEVL"), which is also available to any voter.  A.R.S. § 16-542(C).  A PEVL voter receives a ballot by mail for each and every election in which he or she is eligible to participate.  As Plaintiffs point out, early voting in Arizona has been a huge success.  Approximately 80% of voters opt to vote early, not because they are under any coercion by the State to do so as Plaintiffs imply, but because that is simply how voters choose to vote.  Early voting gives voters nearly a month to research and consider which candidates, judges, and issues that voter supports and PEVL ensures the voter is automatically sent a ballot for every election.

As part of this system that enables Arizona citizens to seamlessly participate in the democratic process—from registering to vote, to learning about candidates[1] and ballot issues,[2] to voting at a time and place of their choosing—the State needs a deadline by which ballots are received so all ballots can be verified and counted.  The State's deadline is uniform for all voters: every ballot must be in the hands of elections officials by the time the polls close on Election Day.  A.R.S. § 16-548(A).

---

[1] A.R,S § 16-956(A)(1) (providing information about all candidates a voter is eligible to vote for, mailed to every household with a registered voter before the primary and the general election).

[2] A.R.S. § 19-123 (requiring the Secretary to publish a publicity pamphlet describing all initiatives and referenda, and providing additional analysis).

Arizona's extensive system that gives voters options regarding when, where and how they can choose to cast their ballot does not satisfy Plaintiffs. They argue that the Election Day deadline for early ballots is unconstitutional and ask this Court to impose a new system that would require ballots to be postmarked by Election Day and received by election officials within five days of the election. While their proposal may be a policy option the Legislature could consider, they have no basis for asserting that the current Election Day deadline is unconstitutional. Plaintiffs' claim fails for a number of reasons and should be dismissed.

First, Plaintiffs Voto Latino, Inc. and Priorities USA lack standing to pursue these claims. Plaintiffs are not membership organizations, and they cannot identify a particularized grievance that action by this Court can remedy. Second, the Secretary does not have the direct relationship or authority over the parties that receive, verify, and tabulate ballots required by the *Ex parte Young* line of cases to overcome Eleventh Amendment immunity. Finally, even if Plaintiffs meet the requirements to seek injunctive relief against an elected official of a sovereign state, their claim that Arizona's requirement that election officials receive ballots cast by mail by Election Day violates anyone's constitutional rights fails as a matter of law.

## BACKGROUND

The Secretary of State is a constitutional officer whose duties are prescribed by statute. Ariz. Const. art. V, § 9. None of the statutes prescribing the Secretary's duties concern receiving and counting ballots. Rather, those responsibilities are assigned to county election officials. *See* A.R.S. § 16-548(A).

Arizona also allows generous alternatives to voting in-person on Election Day. An Arizonan may vote early, in-person or by mail, up to twenty-seven days before the election. A.R.S. §§ 16-541, -542(A), (C). Arizona voters may even "choose to automatically receive a mail ballot for every election." (Doc. 11 at ¶ 21 (citing A.R.S. § 16-544(A)). It costs nothing for a voter to return the ballot by mail; that cost is borne by

the counties.  A.R.S. § 16-542.  All ballots must be in the hands of the county recorder or other officer in charge of elections by the time that polls close on Election Day, A.R.S. § 16-548(A), and all early ballots include instructions that specifically inform voters of the Election Day deadline, A.R.S. § 16-547(C).

Plaintiffs' allegations document the success of early voting in Arizona.  They allege that in 2008 "at least" 1,611 early ballots were rejected as untimely, and in 2018, there were 2,515 ballots rejected for this same reason. (Doc. 11 at ¶ 2.)  Of the "more than one million" early ballots cast in 2008, (*id.* at ¶ 20), only approximately 0.16% were untimely, and the other 99.84% arrived by Election Day in time to be counted.  In 2018, Plaintiffs allege that more than 1.9 million voters voted by mail (*id.*) which means that according to Plaintiffs' allegations, just 0.13% of all the early ballots cast in that election were rejected as untimely. The other 99.87% arrived by Election Day.

Plaintiffs' allegations do not support a claim that Arizona's deadline violates any constitutional requirement.

## ARGUMENT

## I.   PLAINTIFFS LACK STANDING TO CHALLENGE THE ELECTION DAY DEADLINE

"Standing is a 'jurisdictional issue[] deriving from the requirement of a case or controversy under Article III."  *Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012) (citations omitted).  The standing doctrine ensures courts apply the judicial power only to cases and controversies with adversarial parties and a developed record, rather than issue advisory opinions. *See* U.S. Const. art. III, § 2, cl. 1.  Federal courts must dismiss a case that does not satisfy Article III standing requirements for lack of subject matter jurisdiction, because "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (citation and internal quotation marks omitted).  Facts sufficient to sustain

standing "are not mere pleading requirements but rather an indispensable part of plaintiff's case" and must be proved "as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To establish standing for federal injunctive relief, a plaintiff must demonstrate that it:

> is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Wright v. Riveland*, 219 F.3d 905, 914 (9th Cir. 2000). Generally, a party must pursue claims to vindicate their own rights. *Baker v. Carr*, 369 U.S. 186, 207 (1962). "Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562.

Plaintiffs in this lawsuit are two non-profit organizations; no individual voters are parties to this lawsuit. Plaintiffs claim to engage in "statewide voter registration initiatives," "voter education and get-out-the-vote campaigns," (Doc. 11 at ¶ 17) and to "educate, mobilize, and turn out voters across the country" (*Id.* at ¶ 18). Without individual voters claiming an injury, Plaintiffs must satisfy standing through their organization's activities. But Plaintiffs unequivocally fail the tests for both associational and organizational standing.

Associational standing is a narrow exception to the rule that litigants must vindicate their own rights and not the rights of others. *Black Faculty Ass'n of Mesa Coll. v. San Diego Cmty. Coll. Dist.*, 664 F.2d 1153, 1156 (9th Cir. 1981). To obtain relief, the association must show "that one or more of its members are injured." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). Associational standing is recognized when an

organization's members would otherwise have standing on their own, the "interests [the organization] seeks to protect [by the suit] are germane to the organization's purpose," and neither the claim raised nor relief requested requires individuals to participate. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

As an initial matter, Plaintiffs do not claim to be membership organizations, and the Complaint does not recount the identity of a single person who is in any way affiliated with either organization who did not have their vote counted because the county recorder did not receive that person's ballot by Election Day.  (Doc. 11.)  Nor have Plaintiffs identified any voter who was confused by, or concerned about, whether his or her ballot would be sent by mail and not reach the county recorder on time.  (*Id.*)  These facts alone are fatal to Plaintiffs' associational standing claim.  *See Hunt*, 432 at 344-45.

Plaintiffs may demonstrate organizational standing if either can show: "(1) frustration of its organizational mission; and (2) diversion of its resources" to mitigate the effects of the law challenged.  *Smith v. Pac. Props. and Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004).  But Plaintiffs cannot "manufacture the injury by . . . choosing to spend money fixing a problem that otherwise would not affect the organization at all. It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem."  *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

Plaintiffs claim to have standing because they expect to spend "thousands of dollars to educate, mobilize, and turn out voter in Arizona elections."  (Doc. 11 at ¶ 18.)  But these are general operating expenses that Plaintiffs, organizations whose mission includes "educat[ing] voters, among other things, *on when to cast their mail ballots*," and "enfranchising and turning out" voters.  (*Id.* at ¶¶ 17-18 (emphasis added).)  Assuming for a moment that Plaintiffs did obtain the relief they seek—an order that some ballots received after polls closed should be counted—Plaintiffs have not alleged

how their current day-to-day activities would be any different.  Unlike the non-profit in *Havens*, which would suffer direct and cognizable harm if its clients were "steered" away from appropriate housing, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), Plaintiffs in this case will still spend some amount of resources educating voters how to successfully complete their ballot and cast a valid vote, whether or not Arizona's law is enjoined.

Indeed, Plaintiffs allege that voter education is core to their missions (Doc. 11 at ¶¶ 17-18); therefore, it cannot be a *diversion* of resources to continue engaging in that core mission.  *See Shelby Advocates for Valid Elections v. Hargett*, __ F.3d __, 2020 WL 401803 *3 (6th Cir. Jan. 24, 2020) (finding no organizational standing where the alleged harm "pleads only backward-looking costs" and the "alleged diversionary actions" did not "divert resources from its mission" because these actions constituted "its mission"); *ACORN v. Fowler*, 178 F.3d 350, 359 (5th Cir. 1999) (expenditures must be "caused by an[] action by" the defendant that the organization "claims is illegal, as opposed to part of the normal, day-to-day operations of the group" to confer standing).  If Plaintiffs have standing to enjoin the law requiring early ballots to be received by Election Day, they would have standing to challenge any election procedure.  Plaintiffs' complaint is the quintessential "abstract social interest[]" that traditional principles of standing carve out of consideration by the federal judiciary.  *Havens Realty Corp.*, 455 U.S. at 379.

Because the Committee Plaintiffs cannot articulate a coherent theory which gives them standing to challenge Arizona law, Plaintiffs' claims should be dismissed.  They have no cognizable injury and, for similar reasons discussed in Section II below, Plaintiffs' claims are not redressable through an action against the Secretary.  *See Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999) (noting that the "case and controversy" analysis is similar to the Eleventh Amendment inquiry).

**II.     THE ELEVENTH AMENDMENT BARS PLAINTIFFS' CLAIMS**

Sovereign immunity also bars Plaintiffs' claims, because the Secretary does not have the enforcement authority that would enable her to provide the relief Plaintiffs request. Generally, state officials are entitled to Eleventh Amendment immunity for actions taken in their official capacities. *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). The Supreme Court recognized a narrow exception to Eleventh Amendment immunity in *Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* doctrine allows for suits against state officials acting in their official capacities *only* to "prevent [a state official] from doing that which he has no legal right to do." *Ex parte Young*, 209 U.S. at 159. And the official must have a "fairly direct" enforcement authority. *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). "A generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.*

Even if Plaintiffs were the correct party to bring this lawsuit, no order against the Secretary will remedy Plaintiffs' alleged harms. The Secretary's office is a constitutional office whose "powers and duties . . . shall be as prescribed by law," Ariz. Const. art. V, § 9, and those duties do not include "direct[ing] county officials, who are responsible for physically counting ballots" about how to satisfy their statutory duties. (Doc. 11 at ¶ 19.)[3]

Plaintiffs misapprehend the Secretary's statutory role in the election process, arguing that the Secretary has authority as "Arizona's Chief Elections Officer," and "establishes election procedures and administration across Arizona's 15 counties" through the Procedures Manual. (*Id.*) The Secretary's authority is not as sweeping as Plaintiffs claim, and she has no authority to countermand, through the Procedures Manual or otherwise, state law governing when ballots must be received to be counted.

---

[3] While factual allegations are accepted as true on a Motion to Dismiss, legal conclusions are not. *See, e.g, Wilde v. United States*, 385 F.Supp.2d 966, 969 (D. Ariz. 2005).

Plaintiffs' claim that the Secretary is the state's "chief election officer" omits the *purposes* for which she serves in that role.  The Secretary, or the Secretary's designee, is:

> 1.   The chief state election officer who is responsible for coordination of *state responsibilities under the national voter registration act of 1993* (P.L. 103-31; 107 Stat. 77; 42 United States Code § 394) and *under the uniformed and overseas citizens absentee voting act* (42 United States Code section 1973).
>
> 2.   Responsible for providing information on registration and absentee or early ballot procedures to absent uniformed services voters and overseas voters who wish to register to vote or vote in any jurisdiction in this state.

A.R.S. § 16-142 (emphasis added).  She also has specific reporting requirements to the Election Assistance Commission pursuant to the Help America Vote Act.  *Id.* at (B), (C). In other words, A.R.S. § 16-142 assigns the Secretary specific responsibilities to be the point-person for coordinating compliance and reporting as to *federal law*.  What A.R.S. § 16-142 does not do is provide the Secretary with the authority to direct the ballot-counting process.  That responsibility resides with the counties.  A.R.S. § 16-551(A). And the counties— not the Secretary— receive the voters' ballots.  A.R.S. § 16–548(A).

While Plaintiffs correctly point out (Doc. 11 ¶ 19) that the Secretary is authorized to ensure "the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting [and] . . . counting  . . . ballots," that does not allow the Secretary to provide the relief Plaintiffs seek through the Procedures Manual.   The Elections Procedures Manual is constrained by the same statutory authority that binds the Secretary:  A.R.S. § 16-548(A).  She could not insert a provision in the Manual that conflicts with state law.

Plaintiffs have not identified any mechanism whereby the Secretary could "enforce" A.R.S. § 16–548(A)'s Election Day deadline for votes to count.   There is none.  The counties receive, verify, and tabulate the ballots.  *See* A.R.S. §§ 16-503 (requiring the counties to print ballots, at their cost); 16-509 (providing that the county

delivers ballots to the polling place); 16-531 (requiring the county to appoint election boards and other election officials to administer the election); 16-548(A) ("In order to be counted and valid, the ballot must be received by *the county recorder* or other officer in charge of elections or deposited at any polling place in the county no later than 7:00 p.m. on election day.") (emphasis added); 16-621 (giving the county authority to control the proceedings in the counting center); 16-645 (providing the county conducts the precinct canvass, while the Secretary issues the letter of nomination).  The Secretary has no role in any part of the ballot collection, verification, and tabulation process.

The demarcation of duties between the Secretary and the counties is based on Arizona law and the Constitution's broad mandate to states to control the "Time, Place, and Manner" of elections.  U.S. Const. art. I § 4, cl. 1.  When only State procedures—not federal mandates like the National Voter Registration Act—are at issue, the State's regulations regarding elections control.  *Id.*; *see also Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-9 (2013) ("'Times, Places, and Manner,' we have written, are "comprehensive words,' which 'embrace authority to provide a complete code for congressional elections'") (citation omitted).  State law is clear that the Secretary does not have a role in implementing the Election Day deadline established in A.R.S. § 16-548(A).

Because the Secretary does not have any enforcement mechanism—much less a "fairly direct" one, *Coal to Defend Affirmative Action*, 674 F.3d at 1134, Plaintiffs' claims against her should be dismissed.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if Plaintiffs could assert a claim against the Secretary, Plaintiffs have utterly failed to state a legitimate constitutional claim against the Election Day deadline.

Courts considering a challenge to state election laws employ a flexible test: balancing the injury to the plaintiffs against the state interests justifying the rule.

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).   This test applies whether a claim is raised as a First or Fourteenth Amendment or Due Process claim.  *Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir. 2011).   Accordingly, Plaintiffs' claims in both Counts I and II are subject to the *Anderson/Burdick* test.  *Dudum*, 640 F.3d at 1106, n. 15.  Thus, the same balancing test applies: where minimal burdens are at issue, "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions."  *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (citations and internal quotation marks omitted).

As discussed below, Plaintiffs' First Amended Complaint fails to raise any constitutional issue that survives a motion to dismiss.  Assuming Plaintiffs' factual allegations are true, Arizona's requirement that ballots be received by election officials by the time the polls close on Election Day is not an undue burden on any person's right to vote.  Any minimal burden is justified by the State's legitimate interests related to election administration.  Because Plaintiffs have failed to state a claim upon which relief can be granted, their Complaint should be dismissed.

**A.  There Is No Right to Vote Early Under the Federal Constitution**

"Ironically, it is [the State's] willingness to go further than many States in extending the absentee voting privileges so as to include even those attending to election duties that has provided appellants with a basis for arguing that the provisions operate in an invidiously discriminatory fashion to deny them a more convenient method of exercising the franchise."  *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 810-11 (1969).  It is true that "once the States grant the franchise, they must not do so in a discriminatory manner."  *Id.* at 807 (citing *Carrington v. Rash*, 380 U.S. 89 (1965)).  But a plaintiff may not satisfy the *Anderson/Burdick* test by merely alleging that a given state statute or practice violates the right to vote.  *Short v. Brown*, 893 F.3d 671, 677-79 (9th Cir 2018) (finding that slight burdens on the right to vote withstand

review based on a state's general interest).  The constitution is not a "one-way ratchet," such that once the state confers a privilege, it must always then further relax that policy. *Ohio Democratic Party v. Husted*, 834 F.3d 620, 635 (6th Cir. 2016).

But absent an actual burden, a law "merit[s] no special scrutiny."  *Short*, 893 F.3d at 679.  A facially neutral and otherwise constitutional deadline is not transformed into an unconstitutional burden by the fact that a small number of voters return early ballots after Election Day.  This cannot be the rule, or there would be no cogent reason that Plaintiffs' own deadline would not also be unconstitutional.  More pointedly, "absent *any* burden [on the right to vote], there is no reason to call on the State to justify its practice."  *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 732 n.12 (9th Cir. 2015).  Early voting is a convenience for voters long-authorized by Arizona law, but there is nothing unconstitutional about requiring *all* ballots—early and otherwise—be returned by the time polls close on Election Day.

### B. A Twenty-Seven Day Early Voting Period that Includes a Requirement for Ballots to be Received by the Close of the Polls Is Not an Undue Burden on the Right to Vote

As noted, Plaintiffs' claims are governed by the *Anderson/Burdick* test.  Under that test, courts have "repeatedly upheld as 'not severe' restrictions that are generally applicable, evenhanded, politically neutral, and protect the reliability and integrity of the election process."  *Pub Integrity Alliance v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016) (citation omitted).  Obtaining a valid identification, *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (2008), creating shorter voter registration deadlines, *Ohio Democratic Party v. Husted*, 834 F.3d 620, 626-31 (6th Cir. 2016), and establishing rules regarding what equipment could be utilized by voters to cast a ballot, *Weber v. Shelley*, 347 F.3d 1101, 1106-07 (9th Cir. 2003), have been found to impose minimal burdens.  It follows then that a rule requiring a ballot to be returned by Election Day—which the voter received in advance and can return at his or her own option—is, at

11

most, "minimal."  *See Timmons*, 520 U.S. at 358 (where minimal burdens are at issue, "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions").

Plaintiffs complain that "[w]ithout clear guidance from election officials," Arizona voters cannot be sure when to submit their ballot.  (Doc. 11 at ¶ 32.)  But the fact that all ballots must be received by elections officials by Election Day is not secret; state law requires that *every* early ballot issued include printed instructions notifying voters that ballots must be delivered to the officer in charge of elections by 7:00 pm on Election Day. A.R.S. § 16-547(C).  Election officials provide these written instructions on the ballots in multiple languages as necessary to comply with federal law.  52 U.S.C. §10503.  And in practice, as Plaintiffs acknowledge, election officials also communicate to voters through websites and the media that people need to mail their ballots in time to arrive by Election Day.  (Doc. 11 at ¶¶ 30-31.)

The fact that the precise date by which a person needs to drop a ballot in the mail so election officials receive it by Election Day may be imprecise does not make the Election Day deadline an undue burden.  Voters concerned about the timing have a number of options.  They can vote early in person until 5:00pm on the Friday before elections, or at an emergency voting center up until 5:00pm the Monday before the election.  A.R.S. § 16-542(E), (H).  They can drop their early ballot off at the county recorder's office, any official ballot drop-off location, or any early voting location in their county. If they waited until Election Day, they can drop their ballot off at any polling place or vote center in their county.  A.R.S. § 16-542.  They can also choose to cast a ballot at a voting location on Election Day by stating that they have not and will not vote the early ballot or by surrendering their early ballot at the voting location. A.R.S. § 16-579(B).  And they can mail their ballot well in advance of Election Day if they prefer to vote by mail but are concerned about the Election Day deadline.  Voters have multiple options to make sure their vote is timely.

12

1    Plaintiffs complain that voting early resulted in "tens of thousands of votes" cast

2    for Marco Rubio in the 2016 presidential preference election, even though he dropped

3    out of the race shortly before the election.  (Doc. 11 at ¶ 37.)   If voters want to wait until

4    Election Day to see what happens until the campaign ends, they can do so, but Arizona

5    law gives them the option of voting earlier if they choose to do so.   That choice,

6    however, is not a burden on the voter.

7    Plaintiffs also complain that mail delivery can be unpredictable, increasing the

8    risk of ballots missing the Election Day deadline.  (*Id.* at ¶ 35.)  This claim essentially

9    admits that the different instructions provided by county election officials may very well

10   be a direct response to the mail service in their locale (*id.* at ¶ 30), rather than an attempt

11   to confuse voters.  (*Id.* at ¶43-44.)   Again, voters have choices, and they can weigh

12   factors such as the unpredictability of mail delivery when deciding how and when to cast

13   their ballot.   For any mailed ballot, there needs to be a deadline for receipt[4] and

14   somebody may miss it, just as someone may arrive to the polls too late on Election Day

15   to cast a ballot.

16   The  State's  interests  in  the  deadline  far  outweigh  the  minimal  burdens  that

17   Plaintiffs allege.  A clear deadline is an essential part of a system that permits voters to

18   mail in their ballots.  The Election Day deadline is an unambiguous requirement that

19   election  officials  receive  ballots  by  the  time  the  polls  close.   This  prevents  voter

20   confusion and permits voters to make informed decisions about when and how to cast

21   their ballots.  The deadline ensures county officials have a known universe of ballots to

22   process before the canvass.  It also provides confidence to the voting public that post-

23   Election Day votes are not changing the outcome in tight races.  Plaintiffs do not dispute

24   that a deadline is necessary, and a deadline that works for more than 99% of early voters

25   easily satisfies any possible constitutional standard.   Arizona's unambiguous, objective

26

27   ───────────────
     [4] Even Plaintiffs admit that the State has "a legitimate regulatory interest in a *general*
28   cutoff for receiving ballots" (Doc. 11 at ¶ 62), but they disagree that the appropriate
     deadline to receive ballots should be Election Day.

1  deadline is the model of a "reasonable, nondiscriminatory restriction[]" that the *Timmons*
2  court found was usually sufficient to satisfy the State's burden.  The State's interests in
3  orderly election administration, *Nader v. Brewer*, 531 F.3d 1028, 1040 (9th Cir. 2008),
4  easily supports Arizona's law that all ballots must be received by the time the polls close
5  on Election Day.

6       Ultimately, Plaintiffs' arguments do not present constitutional concerns.   The
7  burdens "arising from life's vagaries . . . are neither so serious nor so frequent as to raise
8  any question about the constitutionality" of requiring ballots to be returned by Election
9  Day.  *Crawford*, 553 U.S. at 197.  Likewise, Plaintiffs' preference for a "postmark rule"
10  (*id.* at ¶¶ 35-36) does not demonstrate that Arizona's Election Day deadline is an undue
11  burden on the right to vote.  Accordingly, Count I should be dismissed.

### C. Requiring Voters to Return All Ballots to Elections Officials by Election Day Does Not Implicate Procedural Due Process

14       In Count II, Plaintiffs argue the Election Day deadline is so "poorly
15  communicated to voters" (Doc. 11 at ¶ 5) that it rises to "patent and fundamental
16  unfairness" which will "continually and repeatedly" deny the fundamental right to vote.
17  (Doc. 11 at ¶¶ 66-67, quoting *Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d
18  1153, 1183 (11th Cir. 2008) and *Raetzel v. Parks/Bellmont Absentee Election Bd.*, 762
19  F.Supp 1354, 1358 (D. Ariz. 1990).)[5]   Like the First and Fourteenth Amendment
20  claims, this claim is also analyzed under the *Anderson/Burdick* standard.  *Dudum*, 640
21  F.3d at 1106, n. 15.  Thus, the same balancing test applies: where minimal burdens are at
22  issue, "a State's important regulatory interests will usually be enough to justify
23  reasonable, nondiscriminatory restrictions."  *Timmons*, 520 U.S. at 358 (citations and

---

[5] Plaintiffs quote *Fla. State Conference of N.A.A.C.P.* for the proposition that "[w]hen an election process 'reache[s] the point of patent and fundamental unfairness,' there is a due process violation."  (Doc. 11 at ¶ 67)  But Plaintiffs omit that this quotation is not from the opinion of the court, but from one judge's dissent.  *See Fla. State Conference of N.A.A.C.P.*, 522 F.3d at 1183 (Barkett, J., concurring in part, dissenting in part).  The issue in that case concerned a voter registration verification process, and nothing in the opinion (even the dissent) supports Plaintiffs' claim here.

internal quotation marks omitted). Plaintiffs' allegations and the governing statutes flatly refute those claims.

As discussed above, Arizona's single, objective deadline created by A.R.S. § 16-548(A) is the model of a "reasonable, nondiscriminatory restriction[]" that the *Timmons* court found was usually sufficient to satisfy the State's burden. In tension with their allegation that voters lack guidance on when to mail their ballot to make sure it arrives by Election Day, Plaintiffs allege that voters are deprived of being able to "cast a meaningful and informed vote" because voters who choose to mail their ballot are encouraged to do so a "full week (or more) before Election Day." (*Id.* at ¶ 69.) In any event, as explained above, mailing a ballot is only an option. All Arizona voters are afforded the same opportunity to cast their "meaningful and informed vote" up until 7:00pm on Election Day. It is entirely up to the voter to decide when and how it is done.

County elections officials are duty-bound to faithfully count any valid ballot, however cast, so long as it complies with Arizona law. The state's interest in ensuring orderly election administration easily supports Arizona's law that all ballots must be received by the time the polls close on Election Day. *Nader v. Brewer*, 531 F.3d 1028, 1040 (9th Cir. 2008). Arizona has provided more than adequate process to ensure that voters' ballots are "fairly considered and, if eligible, counted." (Doc. 11 at ¶ 66 (citation omitted).) Plaintiffs' contention (*Id.* at ¶ 70) that Arizona's Election Day deadline is not a "reliable" or "fair way to administer voting by mail" must be rejected, given that Arizona law requires that *every* early ballot issued include printed instructions notifying voters that ballots *must* be delivered to the officer in charge of elections by 7:00 pm on Election Day. A.R.S. § 16-547(C).

In sum, while Plaintiffs plainly prefer a "postmark rule" that requires that ballots be postmarked by Election Day rather than received by Election Day, this is not the forum for that policy debate. The issue for this Court is whether Plaintiffs have stated a

1  claim that provides a basis for concluding Arizona's current law is unconstitutional.

2  They have not done so, and their lawsuit should be dismissed.

3  **CONCLUSION**

4  Plaintiffs are organizations that lack members and do not allege a particularized

5  injury requisite for Article III standing.  Assuming Plaintiffs prevail, the Secretary has no

6  enforcement authority to ensure ballots arriving at a county recorder's office after

7  Election Day are counted.  Finally, the burden here is minimal to nonexistent.  The voter,

8  who chooses to receive a ballot through the mail and has up to twenty-seven days to

9  determine when and how to return it, may not then complain that he or she had to return

10 the ballot by Election Day and undermine orderly election administration and integrity of

11 the election process.  Plaintiffs' Amended Complaint should be dismissed in its entirety.

12

13 RESPECTFULLY SUBMITTED this 3rd day of February, 2020.

14                                      Mark Brnovich
                                        Attorney General
15

16                                       */s/ Kara M. Karlson*
17                                      Kara M. Karlson
                                        Assistant Attorneys General
18                                      *Attorney for Defendant*
                                        *Secretary of State Katie Hobbs*
19

20

21

22

23

24

25

26

27

28

**L.R.CIV. 12.1(c) CERTIFICATION**

As required by Local Rule 12.1(c), undersigned counsel certifies that before filing this motion, counsel for the Secretary of State discussed the issues asserted in this motion with Plaintiffs' counsel, and the parties were unable to agree that Plaintiffs' Amended Complaint was curable in any part by a permissible amendment.


*/s/ Kara M. Karlson*
Kara M. Karlson

1

2

**CERTIFICATE OF SERVICE**

3

The foregoing was e-filed with the Clerk of the Federal Court for the District of Arizona
using the CM/ECF System on February 3, 2020.

4

5

6

Copy emailed this same day to:

7

Sarah R. Gonski (# 032567)

8

PERKINS COIE LLP
2901 North Central Avenue, Suite 2000

9

Phoenix, Arizona 85012-2788

10

Telephone: 602.351.8000
Facsimile: 602.648.7000

11

SGonski@perkinscoie.com

12

Marc E. Elais

13

John Devaney
Amanda R. Callais

14

K'Shaani O. Smith

15

Christina A. Ford
PERKINS COIE LLP

16

700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960

17

melias@perkinscoie.com

18

jdevaney@perkinscoie.com
acallais@perkinscoie.com

19

kshaanismith@perkinscoie.com
christinaford@perkinscoie.com

20

21

  /s/ Misty Keys

22

23

24

25

26

27

28