Mark Brnovich
Attorney General

Kara Karlson (029407)
Assistant Attorney General
Linley Wilson (027040)
Deputy Solicitor General
2005 North Central Avenue
Phoenix, AZ 85004-1592
Telephone (602) 542-4951
Facsimile (602) 542-4385
kara.karlson@azag.gov
linley.wilson@azag.gov
adminlaw@azag.gov

Mary R. O'Grady (011434)
Emma J. Cone-Roddy (034285)
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, AZ 85012-2793
(602)640-9000
mogrady@omlaw.com
econe-roddy@omlaw.com

*Attorneys for Defendant*
*Arizona Secretary of State Katie Hobbs*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Voto Latino, Inc., *et al*,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as Arizona Secretary of State,<br><br>　　　　　　　Defendant, | Case No: 2:19-cv-05685-PHX-DWL<br><br>**ARIZONA SECRETARY OF STATE'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**(Oral Argument Requested)** |

**INTRODUCTION**

Arizona is a national leader in making early voting convenient and accessible for its voters. While many states *still* require voters to provide a reason to vote early or absentee, Arizona has had "no-excuse" early voting since 1992. *Compare* A.R.S. § 16-541 & 1991 Ariz. Sess. Laws, Ch. 308, § 6, eff. Jan. 1, 1992 *with e.g.* CONN. GEN. STAT. ANN. § 9-135 (setting strict requirements to vote absentee). "No excuse" early voting means that *any* Arizona voter can vote early in-person or have their ballot delivered to them up to twenty-seven days before the election, allowing any voter to cast his or her ballot in the comfort of his or her own home. Furthermore, Arizona is one of only a handful of states that has a Permanent Early Voter List ("PEVL"), which is also available to any voter. A.R.S. § 16-544(C). A PEVL voter receives a ballot by mail for each and every election in which he or she is eligible to participate. As Plaintiffs point out, nearly 80% of Arizonans vote by mail. (Doc. 21 at ¶ 1.) They do so not because they are under any coercion by the State as Plaintiffs imply, but because that is simply how voters choose to vote. Early voting gives voters nearly a month to research and consider which candidates, judges, and issues that voter supports and PEVL ensures the voter is automatically sent a ballot for every election.

As part of this system that enables Arizona citizens to seamlessly participate in the democratic process—from registering to vote, to learning about candidates[1] and ballot issues,[2] to voting at a time and place of their choosing—the State needs a deadline by which ballots are received so all ballots can be verified and counted. The State's deadline is uniform for all voters: every ballot must be "received by the county recorder or other officer in charge of elections or deposited at any polling place in the county no later than 7:00 p.m. on election day." A.R.S. § 16-548(A) ("Election Day deadline").

---

[1] *See* A.R,S § 16-956(A)(1) (providing information about all candidates a voter is eligible to vote for, mailed to every household with a registered voter before the primary and the general election).
[2] *See* A.R.S. § 19-123 (requiring the Secretary to publish a publicity pamphlet describing all initiatives and referenda, and providing additional analysis).

1

Arizona's extensive system that gives voters options regarding when, where and how they can choose to cast their ballot does not satisfy Plaintiffs. They argue that the Election Day deadline for early ballots is unconstitutional and ask this Court to impose a new system that would require ballots to be postmarked by Election Day and received by election officials within five days of the election. (Doc. 21 at 24.) While their proposal may be a policy option the Legislature could consider, they have no basis for asserting that the existing Election Day deadline is unconstitutional. Plaintiffs' claims should be dismissed.

First, Plaintiffs Voto Latino, Inc. and Priorities USA lack standing to pursue these claims. These Plaintiffs are not membership organizations, and they cannot identify a particularized grievance that action by this Court can remedy. These Plaintiffs should be dismissed from the lawsuit. Finally, Plaintiffs' claim that Arizona's Election Day deadline violates anyone's constitutional rights fails as a matter of law.

## BACKGROUND

The Secretary of State is a constitutional officer whose duties are prescribed by statute. ARIZ. CONST. art. V, § 9. None of the statutes prescribing the Secretary's duties concern receiving and counting ballots. Rather, those responsibilities are assigned to county election officials. *See* A.R.S. § 16-548(A).

Arizona also allows generous alternatives to voting in-person on Election Day. An Arizonan may vote early, in-person or by mail, up to twenty-seven days before the election. A.R.S. §§ 16-541, -542(A), (C). Arizona voters may even "choose to automatically receive a mail ballot for every election." (Doc. 21 at ¶ 24 (citing A.R.S. § 16-544(A)). It costs nothing for a voter to return the ballot by mail; that cost is borne by the counties. A.R.S. § 16-542(C) (requiring early ballots to be mailed with an "envelope for its return postage prepaid to the address provided by the requesting elector"). All ballots must be in the hands of the county recorder or other officer in charge of elections by the time that polls close on Election Day, *see* A.R.S. § 16-548(A), and all early

ballots must be accompanied by instructions that inform voters of the Election Day deadline, *see* A.R.S. § 16-547(C). Specifically, the printed instructions to early voters must include the following statement: "In order to be valid and counted, the ballot and affidavit must be delivered to the office of the county recorder or other officer in charge of elections or may be deposited at any polling place in the county no later than 7:00 p.m. on election day." A.R.S. § 16–547(C). This has been the law since 1997. *See* 1997 Ariz. Legis. Serv. 2nd Sp. Sess. Ch. 5 (S.B. 1003).

Plaintiffs' allegations document the success of early voting in Arizona. They allege that in 2008, "at least" 1,611 early ballots were rejected as untimely, and in 2018, "more than 3,000 ballots were rejected" for this same reason. (Doc. 21 at ¶ 2.) Of the more than one million early ballots cast in 2008 (*id.* at ¶ 23), only approximately 0.16% were untimely, and the other 99.84% arrived by Election Day in time to be counted. Plaintiffs allege that in 2018, more than 1.9 million voters voted by mail (*id.*) which means that according to Plaintiffs' allegations, just 0.13% of all the early ballots cast in that election were rejected as untimely. The other 99.87% arrived by Election Day.

Plaintiffs' allegations do not support a claim that Arizona's Election Day deadline violates the federal Constitution.

## ARGUMENT

### I. ORGANIZATIONAL PLAINTIFFS LACK STANDING TO CHALLENGE THE ELECTION DAY DEADLINE

"Standing is a 'jurisdictional issue[] deriving from the requirement of a case or controversy under Article III." *Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012) (citations omitted). The standing doctrine ensures courts apply the judicial power only to cases and controversies with adversarial parties and a developed record, rather than issue advisory opinions. *See* U.S. Const. art. III, § 2, cl. 1. Federal courts must dismiss a case that does not satisfy Article III standing requirements for lack of subject matter jurisdiction, because "[n]o principle is more fundamental to the judiciary's proper role in

our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (citation and internal quotation marks omitted). Facts sufficient to sustain standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case" and must be proved "as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To establish standing for federal injunctive relief, a plaintiff must demonstrate that it:

> is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Wright v. Riveland*, 219 F.3d 905, 914 (9th Cir. 2000). Generally, a party must pursue claims to vindicate their own rights. *Baker v. Carr*, 369 U.S. 186, 207 (1962). "Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562.

Two of the Plaintiffs in this lawsuit are non-profit organizations, Voto Latino and Priorities USA ("Organizational Plaintiffs"). These Plaintiffs claim to engage in "statewide voter registration initiatives," "voter education and get-out-the-vote campaigns" (Doc. 21 at ¶ 17), and to "educate, mobilize, and turn out voters across the country" (*id.* at ¶ 18). Organizational Plaintiffs must satisfy standing through their organization's activities, and they unequivocally fail the tests for a cognizable injury on any theory.

Associational standing is a narrow exception to the rule that litigants must vindicate their own rights and not the rights of others. *Black Faculty Ass'n of Mesa Coll.*

4

*v. San Diego Cmty. Coll. Dist.*, 664 F.2d 1153, 1156 (9th Cir. 1981).  To obtain relief, the association must show "that one or more of its members are injured."  *Warth v. Seldin*, 422 U.S. 490, 515 (1975).  Associational standing is recognized when an organization's members would otherwise have standing on their own, the "interests [the organization] seeks to protect [by the suit] are germane to the organization's purpose," and neither the claim raised nor relief requested requires individuals to participate.  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Organizational Plaintiffs do not claim to be membership organizations.  (See Doc. 21 at ¶¶ 17–18.)  This is fatal to any associational standing theory.  *See Hunt*, 432 at 344-45.

The Organizational Plaintiffs may demonstrate an injury on an organizational standing if either organization can show: "(1) frustration of its organizational mission; and (2) diversion of its resources" to mitigate the effects of the law challenged.  *Smith v. Pac. Props. and Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004).  But these Plaintiffs cannot "manufacture the injury by . . . choosing to spend money fixing a problem that otherwise would not affect the organization at all. It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem."  *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

Organizational Plaintiffs claim to have been injured because they expect to spend "thousands of dollars to educate, mobilize, and turn out voter in Arizona elections." (Doc. 21 at ¶ 18.)  But these are general operating expenses that Plaintiffs, organizations whose mission includes educating and "turn[ing] out" voters, will always incur.  (*Id.* at ¶¶ 17-18.)  Assuming for a moment that these Plaintiffs did obtain the relief they seek— an order that some ballots received after polls closed should be counted—they have not alleged how their current day-to-day activities would be any different.  Unlike the non-profit in *Havens*, which would suffer direct and cognizable harm if its clients were

5

"steered" away from appropriate housing, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), Plaintiffs in this case will still spend some amount of resources educating voters how to successfully complete their ballot and cast a valid vote, whether or not Arizona's law is enjoined.

Indeed, Plaintiffs allege that voter education is core to their missions (Doc. 21 at ¶¶ 17-18); therefore, it cannot be a *diversion* of resources to continue engaging in that effort. *See Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. Jan. 24, 2020) (finding no organizational standing where the alleged harm "pleads only backward-looking costs" and the "alleged diversionary actions" did not "divert resources from its mission" because these actions constituted "its mission"); *ACORN v. Fowler*, 178 F.3d 350, 359 (5th Cir. 1999) (expenditures must be "caused by an[] action by" the defendant that the organization "claims is illegal, as opposed to part of the normal, day-to-day operations of the group" to confer standing). If Plaintiffs have standing to enjoin the law requiring early ballots to be received by Election Day, they would have standing to challenge any election procedure. Plaintiffs' complaint is the quintessential "abstract social interest[]" that traditional principles of standing carve out of consideration by the federal judiciary. *Havens Realty Corp.*, 455 U.S. at 379. The Organizational Plaintiffs cannot articulate a coherent theory which gives them standing to challenge Arizona law. They have no cognizable injury. Voto Latino and Priorities USA should be dismissed from the case.

## II.  PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs have utterly failed to state a legitimate constitutional claim against the Election Day deadline. Courts considering a challenge to state election laws employ a flexible test: balancing the injury to the plaintiffs against the state interests justifying the rule. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). This test applies whether a claim is raised as a First or Fourteenth

1   Amendment or Due Process claim. *Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir.
2   2011). Accordingly, Plaintiffs' claims in both Counts I and II are subject to the
3   *Anderson/Burdick* test. *Id*. Thus, the same balancing test applies: where minimal
4   burdens are at issue, "a State's important regulatory interests will usually be enough to
5   justify reasonable, nondiscriminatory restrictions." *Timmons v. Twin Cities Area New*
6   *Party*, 520 U.S. 351, 358 (1997) (citations omitted).

7   As discussed below, Plaintiffs' Second Amended Complaint fails to raise any
8   constitutional issue that survives a motion to dismiss. Assuming Plaintiffs' factual
9   allegations are true, Arizona's requirement that ballots be received by election officials
10  by the time the polls close on Election Day is not an undue burden on any person's right
11  to vote. Any minimal burden is justified by the State's legitimate interests related to
12  election administration. Because Plaintiffs have failed to state a claim upon which relief
13  can be granted, their Complaint should be dismissed.

**A. The Election Day Deadline Does Not Violate the Federal Constitution**

16  "Ironically, it is [the State's] willingness to go further than many States in
17  extending the absentee voting privileges so as to include even those attending to election
18  duties that has provided appellants with a basis for arguing that the provisions operate in
19  an invidiously discriminatory fashion to deny them a more convenient method of
20  exercising the franchise." *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S.
21  802, 810-11 (1969). It is true that "once the States grant the franchise, they must not do
22  so in a discriminatory manner." *Id.* at 807 (citing *Carrington v. Rash*, 380 U.S. 89
23  (1965)). But a plaintiff may not state a claim under *Anderson/Burdick* by merely
24  alleging that a given state statute or practice violates the right to vote. *Short v. Brown*,
25  893 F.3d 671, 677-79 (9th Cir 2018) (finding that slight burdens on the right to vote
26  withstand review based on a state's general interest). The constitution is not a "one-way

1  ratchet," such that once the state confers a privilege, it must always then further relax
2  that policy. *Ohio Democratic Party v. Husted*, 834 F.3d 620, 635 (6th Cir. 2016).

3       Absent an actual burden, a law "merit[s] no special scrutiny." *Short*, 893 F.3d at
4  679.  A facially neutral and otherwise constitutional deadline is not transformed into an
5  unconstitutional burden by the fact that a small number of voters return early ballots
6  after Election Day.  This cannot be the rule, or there would be no cogent reason that
7  Plaintiffs' suggested deadline would not also be unconstitutional.  More pointedly,
8  "absent *any* burden [on the right to vote], there is no reason to call on the State to justify
9  its practice." *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 732 n.12 (9th Cir. 2015).
10 Early voting is a convenience for voters long-authorized by Arizona law.  There is
11 nothing unconstitutional about requiring *all* ballots—early and otherwise—to be returned
12 by the time polls close on Election Day.

        **B. A Twenty-Seven Day Early Voting Period that Includes a Requirement for Ballots to be Received by the Close of the Polls Is Not an Undue Burden on the Right to Vote**

16      As noted, Plaintiffs' claims are governed by the *Anderson/Burdick* test.  Under
17 that test, courts have "repeatedly upheld as 'not severe' restrictions that are generally
18 applicable, evenhanded, politically neutral, and protect the reliability and integrity of the
19 election process." *Pub Integrity Alliance v. City of Tucson*, 836 F.3d 1019, 1024 (9th
20 Cir. 2016) (citation omitted).  Obtaining a valid identification, *Crawford v. Marion Cnty.*
21 *Election Bd.*, 553 U.S. 181, 198 (2008), creating shorter voter registration deadlines,
22 *Ohio Democratic Party*, 834 F.3d at 626-31, and establishing rules regarding what
23 equipment could be utilized by voters to cast a ballot, *Weber v. Shelley*, 347 F.3d 1101,
24 1106-07 (9th Cir. 2003), have been found to impose minimal burdens.  It follows then
25 that a rule requiring a ballot to be returned by Election Day—which the voter received in
26 advance and can return at his or her own option—is, at most, "minimal." *See Timmons*,
27 520 U.S. at 358 (where minimal burdens are at issue, "a State's important regulatory

1 interests will usually be enough to justify reasonable, nondiscriminatory restrictions");
2 *see also Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1377 (S.D. Fla. 2004) (holding that
3 the requirement that ballots be received by 7:00 p.m. on Election Day presents only a
4 "light imposition" on plaintiffs' right to vote and is justified by the State's interest to
5 ensure a fair and honest election and to count votes within a reasonable time).

6 Indeed, at least seventeen other states have adopted similar deadlines that clearly
7 and reasonably require absentee ballots to be received by Election Day.  *See, e.g.,* ARK.
8 CODE ANN. § 7–5–411(a)(1)(A) (ballot must be received "not later than 7:30 p.m. on
9 election day"); COLO. REV. STAT. ANN. § 1–7.5–107 (C)(II) (ballots "must be in the
10 hands of the county clerk and recorder or designated election official no later than 7 p.m.
11 on the day of the election"); 15 DEL. CODE ANN. tit. 15, § 5508(b) ("For an absentee
12 ballot to be counted" the ballot must be returned "before the polls close on the day of the
13 election"); HAW. REV. STAT. § 11–104(c)(1) (ballot must be "received at the office of the
14 clerk no later than the closing time [] on the date of the election"); IDAHO CODE ANN. §
15 34–1005 ("an absentee ballot must be received by the issuing officer by 8:00 p.m. on the
16 day of the election before such ballot may be counted"); KY. REV. STAT. ANN. §
17 117.086(1) ("In order to be counted, the ballots shall be received by the clerk by at least
18 the time established by the election laws generally for the closing of the polls, which
19 time shall not include the extra hour during which those voters may vote who were
20 waiting in line to vote at the scheduled poll closing time"); ME. REV. STAT. ANN. tit. 21-
21 A § 755 ("In order to be valid, an absentee ballot must be delivered to the municipal
22 clerk at any time before the polls are closed."); MICH. COMP. LAWS ANN. § 168.764a
23 ("The ballot must reach the clerk or an authorized assistant of the clerk before the close
24 of the polls on election day."); N.H. REV. STAT. ANN. § 659:47 ("No absentee ballot
25 shall be processed or counted unless it is delivered to the moderator at the proper polling
26 place prior to the closing of the polls."); N.J. STAT. ANN. § 19: 62–10 ("For a ballot to be
27 counted, it shall be received by the county board of elections no later than the time
28

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

established for the closing of the polls for that election"); N.M. STAT. ANN. § 1–6–10(C) (mailed ballots "shall be accepted until 7:00 p.m. on election day"); N.D. CENT. CODE ANN. § 16.1–07–05(2) ("The absentee ballot must be returned to the county auditor's office by four p.m. on the day of the election."); OR. REV. STAT. ANN. § 253.070 ("A ballot from an absent elector must be received by a county clerk not later than 8 p.m. of the day of the election."); S.D. CODIFIED LAWS § 12–19–12 ("If an absentee ballot is delivered to a polling place after the polls are closed, the absentee ballot may not be counted or opened."); VA. CODE ANN. § 24.2–709(A) ("Absentee ballots shall be returned to the general registrar before the closing of the polls."); WIS. STAT. ANN. 6.87(6) ("The ballot shall be returned so it is delivered to the polling place no later than 8 p.m. on election day."); WYO. STAT. ANN. § 22–9–118 ("Absentee ballots returned to the county clerk not later than 7:00 p.m. on election day shall be counted.").

Plaintiffs complain that "[w]ithout clear guidance from election officials," Arizona voters cannot be sure when to submit their ballot. (Doc. 21 at ¶ 35.) But the fact that all ballots must be received by elections officials by Election Day is not secret; as noted above, state law requires that *every* early ballot issued include printed instructions notifying voters that ballots must be delivered to the officer in charge of elections by 7:00 p.m. on Election Day. A.R.S. § 16-547(C). Election officials provide these written instructions on the ballots in multiple languages as necessary to comply with federal law. 52 U.S.C. §10503. And in practice, as Plaintiffs acknowledge, election officials also communicate to voters through websites and the media that Arizonans need to mail their ballots in time to arrive by Election Day. (Doc. 21 at ¶¶ 33–34.)

The fact that the precise date by which a person needs to drop a ballot in the mail so election officials receive it by Election Day may be imprecise does not make the Election Day deadline an undue burden. Voters concerned about the timing have a number of options. They can vote early in person until 5:00pm on the Friday before the

10

election, or at an emergency voting center up until 5:00pm the Monday before the election. A.R.S. § 16-542(E), (H). They can drop their early ballot off at the county recorder's office, any official ballot drop-off location, or any early voting location in their county. If they waited until Election Day, they can drop their ballot off at *any* polling place or vote center in their county. A.R.S. § 16-548(A). They can also choose to cast a ballot at a voting location on Election Day by stating that they have not and will not vote the early ballot or by surrendering their early ballot at the voting location. A.R.S. § 16-579(B). And they can mail their ballot well in advance of Election Day if they prefer to vote by mail but are concerned about the Election Day deadline. Voters have multiple options to make sure their vote is timely.

Plaintiffs complain that voting early resulted in "tens of thousands of votes" cast for Marco Rubio in the 2016 presidential preference election, even though he dropped out of the race shortly before the election. (Doc. 21 at ¶ 40.) If voters want to wait until Election Day to see what happens until the campaign ends, they can do so, but Arizona law gives them the option of voting earlier if they choose to do so. That choice, however, is not a burden on the voter.

Plaintiffs also complain that mail delivery can be unpredictable, increasing the risk of ballots missing the Election Day deadline. (*Id.* at ¶ 38.) This claim essentially admits that the different instructions previously provided by county election officials may very well be a direct response to the mail service in their locale  Again, voters have choices, and they can weigh factors such as the unpredictability of mail delivery when deciding how and when to cast their ballot. For any mailed ballot, there needs to be a deadline for receipt[4] and somebody may miss it, just as someone may arrive to the polls too late on Election Day to cast a ballot.

---

[4] Even Plaintiffs admit that the State has "a legitimate regulatory interest in a *general* cutoff for receiving ballots" (Doc. 21 at ¶ 65); they simply disagree that the appropriate deadline to receive ballots should be Election Day.

11

The State's interests in the deadline far outweigh the minimal burdens that Plaintiffs allege. A clear deadline is an essential part of a system that permits voters to mail in their ballots. The Election Day deadline is an unambiguous requirement that election officials receive ballots by the time the polls close. This prevents voter confusion and permits voters to make informed decisions about when and how to cast their ballots. The deadline ensures county officials have a known universe of ballots to process before the canvass. It also provides confidence to the voting public that post-Election Day votes are not changing the outcome in tight races. Plaintiffs do not dispute that a deadline is necessary, and a deadline that works for more than 99% of early voters easily satisfies any possible constitutional standard. Arizona's unambiguous, objective deadline is the model of a "reasonable, nondiscriminatory restriction[]" that the *Timmons* court found was usually sufficient to satisfy the State's burden. The State's interests in orderly election administration, *Nader v. Brewer*, 531 F.3d 1028, 1040 (9th Cir. 2008), easily supports Arizona's law that all ballots must be received by the time the polls close on Election Day.

Ultimately, Plaintiffs' arguments do not present constitutional concerns. The burdens "arising from life's vagaries . . . are neither so serious nor so frequent as to raise any question about the constitutionality" of requiring ballots to be returned by Election Day. *Crawford*, 553 U.S. at 197. Likewise, Plaintiffs' preference for a "postmark rule" (*id*. at ¶¶ 37-39) does not demonstrate that Arizona's Election Day deadline is an undue burden on the right to vote. Accordingly, Count I should be dismissed.

**C. Requiring Voters to Return All Ballots to Elections Officials by Election Day Does Not Implicate Procedural Due Process**

In Count II, Plaintiffs argue the Election Day deadline rises to a denial of procedural due process because, "[h]aving induced its voters to vote by mail, Arizona must establish adequate procedures to ensure that voters have a reliable, fair, and effective method to cast their ballots." (Doc. 21 at ¶¶ 67-76, quoting *Fla. State*

12

*Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1183 (11th Cir. 2008) and *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F.Supp 1354, 1358 (D. Ariz. 1990).)[5]  Like the First and Fourteenth Amendment claims, this claim is also analyzed under the *Anderson/Burdick* standard.  *Dudum*, 640 F.3d at 1106, n. 15.  Thus, the same balancing test applies: where minimal burdens are at issue, "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions."  *Timmons*, 520 U.S. at 358 (citations and internal quotation marks omitted).  Plaintiffs' allegations and the governing statutes flatly refute those claims.

As discussed above, Arizona's single, objective deadline created by A.R.S. § 16-548(A) is the model of a "reasonable, nondiscriminatory restriction[]" that the *Timmons* court found was usually sufficient to satisfy the State's burden.  In tension with their allegation that voters lack guidance on when to mail their ballot to make sure it arrives by Election Day, Plaintiffs allege that voters are deprived of being able to "cast a meaningful and informed vote" because voters who choose to mail their ballot are encouraged to do so a "full week (or more) before Election Day."  (*Id.* at ¶ 72.)  In any event, as explained above, mailing a ballot is only one of many options available to voters.  All Arizona voters are afforded the same opportunity to cast their "meaningful and informed vote" up until 7:00 p.m. on Election Day.  It is entirely up to the voter to decide when and how it is done.

County elections officials are duty-bound to faithfully count any valid ballot, however cast, so long as it complies with Arizona law.  The state's interest in ensuring orderly election administration easily supports Arizona's law that all ballots must be received by the time the polls close on Election Day.  *Nader*, 531 F.3d at 1040.  Arizona

---

[5] Plaintiffs quote *Fla. State Conference of N.A.A.C.P.* for the proposition that "[w]hen an election process 'reache[s] the point of patent and fundamental unfairness,' there is a due process violation."  (Doc. 21 at ¶ 70.)  But Plaintiffs omit that this quotation is not from the opinion of the court, but from one judge's dissent.  *See Fla. State Conference of N.A.A.C.P.*, 522 F.3d at 1183 (Barkett, J., concurring in part, dissenting in part).  The issue in that case concerned a voter registration verification process, and nothing in the opinion (even the dissent) supports Plaintiffs' claim here.

has provided more than adequate process to ensure that voters' ballots are fairly considered and, if eligible, counted. Plaintiffs' contention (Doc. 21 at ¶ 73) that Arizona's Election Day deadline is not a "reliable" or "fair way to administer voting by mail" must be rejected, given that Arizona law requires that *every* early ballot issued include printed instructions notifying voters that ballots *must* be delivered to the officer in charge of elections by 7:00 p.m. on Election Day. A.R.S. § 16-547(C).

In sum, while Plaintiffs plainly prefer a "postmark rule" that requires that ballots be postmarked by Election Day rather than received by Election Day, this is not the forum for that policy debate. The issue for this Court is whether Plaintiffs have stated a claim that provides a basis for concluding Arizona's current law is unconstitutional. They have not done so, and their lawsuit should be dismissed.

## CONCLUSION

The burden here is minimal to nonexistent. An Arizona voter, who chooses to receive a ballot through the mail and has up to twenty-seven days to determine when and how to return it, may not then complain that he or she had to return the ballot by Election Day and undermine orderly election administration and integrity of the election process. Plaintiffs' Second Amended Complaint should be dismissed in its entirety.

RESPECTFULLY SUBMITTED this 20th day of March, 2020.

        Mark Brnovich
        Attorney General


       */s/ Kara M. Karlson*
       Kara M. Karlson
       Assistant Attorneys General
       *Attorney for Defendant*
       *Secretary of State Katie Hobbs*

**L.R.CIV. 12.1(c) CERTIFICATION**

As required by Local Rule 12.1(c), undersigned counsel certifies that before filing this motion, counsel for the Secretary of State discussed the issues asserted in this motion with Plaintiffs' counsel, and the parties were unable to agree that Plaintiffs' Amended Complaint was curable in any part by a permissible amendment.

*/s/ Kara M. Karlson*
Kara M. Karlson

**CERTIFICATE OF SERVICE**

The foregoing was e-filed with the Clerk of the Federal Court for the District of Arizona using the CM/ECF System on March 20, 2020.

Sarah R. Gonski (# 032567)
Alexis E. Danneman (#030478)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
SGonski@perkinscoie.com

Marc E. Elais
John Devaney
Amanda R. Callais
K'Shaani O. Smith
Christina A. Ford
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
melias@perkinscoie.com
jdevaney@perkinscoie.com
acallais@perkinscoie.com
kshaanismith@perkinscoie.com
christinaford@perkinscoie.com