Sarah R. Gonski (Bar. No. 032567)
Alexis E. Danneman (Bar. No. 030478)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8201
Facsimile: 602.648.7000
SGonski@perkinscoie.com
ADanneman@perkinscoie.com
DocketPHX@perkinscoie.com

Marc E. Elias*
John Devaney*
Amanda R. Callais*
K'Shaani O. Smith*
Zachary J. Newkirk*
Christina A. Ford*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211
melias@perkinscoie.com
jdevaney@perkinscoie.com
acallais@perkinscoie.com
kshaanismith@perkinscoie.com
znewkirk@perkinscoie.com
christinaford@perkinscoie.com

*Admitted pro hac vice*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Voto Latino Foundation, Priorities USA, and Shelby Aguallo, | No. 2:19-cv-05685-DWL |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| Katie Hobbs, in her official capacity as Arizona Secretary of State, | |
| Defendant. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 4

   I.   Plaintiffs have standing to challenge Arizona's Election Day Receipt
       Deadline. ............................................................................................................ 4

       A. Legal Standard for Standing ................................................................... 4

       B. Plaintiffs Voto Latino and Priorities USA have alleged sufficient facts to
          support direct organizational standing. ................................................... 4

   II.   The Amended Complaint sufficiently states claims for relief................................. 7

       A. Legal Standard for Dismissal ................................................................. 7

       B. Plaintiffs sufficiently allege that the Election Day Receipt Deadline
          inflicts serious burdens on the right to vote not justified by state interests. ........ 8

       C. Plaintiffs sufficiently allege that the Election Day Receipt Deadline
          violates the Procedural Due Process Clause. ....................................... 13

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**             **Page(s)**

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983) ........................................................................... 10

*Arizona Libertarian Party v. Reagan*,
  798 F.3d 723, 726 (9th Cir. 2015) ....................................... 9

*Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*,
  648 F.3d 986 (9th Cir. 2011) ...................................................... 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................ 8

*Bernhardt v. Cty. of Los Angeles*,
  279 F.3d 862 (9th Cir. 2002) ........................................... 4

*Crawford v. Marion Cty. Election Bd.*,
  472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008) .................................. 1, 4, 11

*Democratic Nat'l Comm. v. Bostelmann*,
  20-cv-249, 2020 WL 1638374 (W.D. Wis. Apr. 2, 2020) ......................... 13

*Doe v. Walker*,
  746 F. Supp. 2d 667 (D. Md. 2010) ............................................ 13

*Dudum v. Arntz*,
  640 F.3d 1098 (9th Cir. 2011) ...................................... 14

*Dudum v. City & Cty. of S.F.*,
  No. C 10-00504 RS, 2010 WL 3619709 (N.D. Cal. Sept. 9, 2010) ............. 14

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*,
  959 F.2d 742 (9th Cir. 1991) .................................................. 7

*Friedman v. Snipes*,
  345 F. Supp. 2d 1356 (S.D. Fla. 2004) ...................................... 9

*Harper v. Va. State Bd. of Elections*,
  383 U.S. 663 (1966) ........................................................... 10

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018) ................................................. 4

*League of Women Voters of N.C. v. North Carolina*,
  769 F.3d 224 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015) ............ 10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................ 4, 6

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ........................................................................... 14

*Nat'l Ass'n of Optometrists & Opticians Lenscrafters, Inc. v. Brown*,
567 F.3d 521 (9th Cir. 2009) ............................................................ 5

*Nat'l Council of La Raza, v. Cegavske*,
800 F.3d 1032 (9th Cir. 2015) ...................................................... 6, 7

*Ne. Ohio Coal. for Homeless v. Husted*,
696 F.3d 580 (6th Cir. 2012) ..................................................... 10, 11

*Nozzi v. Hous. Auth. of City of L.A.*,
806 F.3d 1178 (9th Cir. 2015) ........................................................ 14

*Oceanside Golf Inst., Inc. v. City of Oceanside*,
Nos. 88-5647, 88-6056, 1989 WL 61771 (9th Cir. June 1, 1989) ............ 14

*Ohio State Conference of N.A.A.C.P. v. Husted*,
768 F.3d 524 (6th Cir. 2014), *vacated on other grounds*, No. 14-3877,
2014 WL 10384647 (6th Cir. Oct. 1, 2014) .................................. 11

*One Wis. Inst., Inc. v. Nichol*,
155 F. Supp. 3d 898 (W.D. Wis. 2015) ............................................. 9

*Price v. N.Y. State Bd. of Elections*,
540 F.3d 101 (2d Cir. 2008) ............................................................. 9

*Pub. Integrity All., Inc. v. City of Tucson*,
836 F.3d 1019 (9th Cir. 2016) ........................................................ 11

*Raetzel v. Parks/Bellemont Absentee Election Bd.*,
762 F. Supp. 1354 (D. Ariz. 1990) ........................................ 14, 15, 16

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
No. 19A1016, 2020 WL 1672702 (U.S. Apr. 6, 2020) ..................... 2, 12

*Reynolds v. Sims*,
377 U.S. 533 (1964) ............................................................................ 1

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
547 U.S. 47 (2006) ............................................................................. 5

*Saucedo v. Gardner*,
335 F. Supp. 3d 202 (D.N.H. 2018) ................................................ 15

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Short v. Brown*,
  893 F.3d 671 (9th Cir. 2018) ............................................................. 9

*Smith v. Pac. Properties & Dev. Corp.*,
  358 F.3d 1097 (9th Cir. 2004) ........................................................ 5, 6

*Soltysik v. Padilla*,
  910 F.3d 438 (9th Cir. 2018) ................................................. 8, 9, 10, 12

*Thompson v. Paul*,
  657 F. Supp. 2d 1113 (D. Ariz. 2009) ................................................ 8

*United States v. Cunningham*,
  No. 3:08cv709, 2009 WL 3350028 (E.D. Va. Oct. 15, 2009) .................... 13

*United States v. Texas*,
  252 F. Supp. 234 (W.D. Tex. 1966), *aff'd*, 384 U.S. 155 ...................... 15

*Zessar v. Helander*,
  No. 05C1917, 2006 WL 642646 (N.D. Ill. Mar. 13, 2006) ..................... 15

*Zinermon v. Burch*,
  494 U.S. 113 (1990) ....................................................................... 14

**STATUTES**

A.R.S. § 16-542(C) ........................................................................... 3

A.R.S. § 16-548(A) ........................................................................... 3

**OTHER AUTHORITIES**

*Arizona Libertarian Party v. Reagan* ................................................. 9

798 F.3d 723, 726 (9th Cir. 2015) ...................................................... 9

**INTRODUCTION**

"There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth. The right to vote includes the right to have the ballot counted." *Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964) (citation and quotation omitted). Nevertheless, since 2008, Arizona has failed to count over 17,000 ballots in its statewide General Elections, disenfranchising thousands of voters each election, simply because those voters' ballots—which were completed and mailed prior to Election Day—did not arrive at the County Recorder's Office before 7:00 p.m. on Election Day (the "Election Day Receipt Deadline"). What is more, there is no question that these disenfranchised voters were disproportionately Hispanic and Latino, Native American, and rural voters. Rather than acknowledge that the Election Day Receipt Deadline disenfranchises thousands of voters through no fault of their own, Defendant Secretary Hobbs (the "Secretary") dismisses their disenfranchisement as a minimal burden on the right to vote and seeks to avoid substantive judicial review altogether. But disenfranchising thousands of Arizonans each year is anything but minimal, and contrary to the Secretary's arguments, Plaintiffs' Second Amended Complaint sets forth more than sufficient grounds for this Court to proceed on the Equal Protection and Due Process claims set out therein.

*First*, contrary to the Secretary's arguments, all Plaintiffs are harmed by Arizona's Election Day Receipt Deadline and all Plaintiffs have standing, including Organizational Plaintiffs Voto Latino Foundation and Priorities USA. In fact, the Secretary has not even challenged Individual Voter Plaintiff Aguallo's standing to sue, and it is well-settled that where injunctive relief is sought, "only one plaintiff with standing is required." *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008).

*Second*, disenfranchising thousands of voters each election and disparately disenfranchising minority voters without justification is actionable under the First and Fourteenth Amendments, and Plaintiffs have stated a claim for relief. The Election Day Receipt Deadline requires voters to return their mail ballots six to ten days in advance of Election Day (at a minimum)—a cutoff that voters understandably miss due to unreliable

and slow mail service in Arizona as well as the County Recorders' inconsistent messaging on these deadlines. Nor is in-person delivery of those mail ballots a realistic option for voters who lack the resources to reach a ballot drop off location, which may be located a significant distance from the voter. These burdens are even more severe in light of the COVID-19 crisis, which is nearly certain to limit voters' ability to vote in person, making voting by mail Arizonans' only legal or practical method to exercise their fundamental right to vote in the upcoming General Election. None of the Secretary's stated interests in the Election Day Receipt Deadline can justify the burdens on these voters.

More fundamentally, evaluation under the *Anderson-Burdick* framework is a highly factual analysis that is not appropriate for dismissal at the motion to dismiss stage. Indeed, the Secretary has not cited a single case dismissing an *Anderson-Burdick* claim on a motion to dismiss, and just two weeks ago the U.S. Supreme Court evaluated an Election Day Receipt Deadline case in Wisconsin *on the merits* under the same *Anderson-Burdick* framework at issue here, allowing the lower court's extension of the receipt deadline to stand provided that the absentee ballots were postmarked by Election Day, even though Wisconsin's law, like Arizona's, provided that mail ballots must be received by Election Day to be counted. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, No. 19A1016, 2020 WL 1672702 (U.S. Apr. 6, 2020). That is precisely the relief the Plaintiffs seek here, and the Secretary cannot plausibly claim that Plaintiffs have not stated a claim where federal courts have found an undue burden on the right to vote as a result of receipt deadlines.

Contrary to the Secretary's assertions, Arizona's mail voting regime is not seamless. Thousands of voters are disenfranchised each year by the Election Day Receipt Deadline. As a result, it does not satisfy the Constitution, and it should not satisfy the Secretary either. For all of these reasons and those stated below, Plaintiffs have stated a claim and the Secretary's Motion to Dismiss should be denied.

## BACKGROUND

On February 24, 2020, Plaintiffs filed their Second Amended Complaint ("Complaint"), *see* Doc. 21, challenging Arizona's refusal to count ballots that arrive after

the Election Day Receipt Deadline, *see* A.R.S. § 16-548(A), under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution. As alleged therein, in the past decade, several thousand voters have been disenfranchised in each General Election solely because their ballots arrived after the Election Day Receipt Deadline. *See* Doc. 21 at ¶ 32. This disenfranchisement is not equally distributed among voters: Arizona's Hispanic and Latino, Native American, and rural voters are significantly more likely to be disenfranchised by the law than nonminority and urban voters are. *See* Doc. 21 at ¶¶ 4-5. In urban Maricopa County, for example, Hispanic and Latino voters are almost four times more likely to be disenfranchised by the law than white voters are, and Native American voters are five and half times more likely to be disenfranchised by the law than white voters are. *Id.* at ¶ 44. Moreover, rural voters in Santa Cruz, Cochise, and Mohave Counties are approximately five times more likely to be disenfranchised by the law than voters in Maricopa County. *Id.* These voters' ballots are rejected even if they were mailed on or before Election Day, and even if they were mailed by or before the various mail-in cut-off dates advertised by their local recorders' offices. *Id.* at ¶ 26.

Arizona's mail-in voting regime does not require County Recorders to send voters on the Permanent Early Voter List (PEVL) a mail ballot until 24 days before Election Day. A.R.S. § 16-542(C); Doc. 21 at ¶ 25. That ballot, depending on the county it is mailed in, likely takes between 6 and 10 days to reach a voter, who must then return the mail ballot at the direction of Arizona election officials at least 6 days, and sometimes 10 days, before Election Day to ensure it will be counted. *See* Doc. 21 at ¶ 20, 26. Such a timeframe allows voters, and particularly voters in rural counties and minority voters who live in communities where mail delivery is unreliable or infrequent, only a handful of days to return their mail ballot, *see id.* at ¶¶ 48-51—far less than the 27 days asserted by the Secretary, *see* Doc. 30 at 8, 14. Nor is dropping off a ballot in person at a county recorder's office or a polling place on Election Day a feasible option for many Hispanic and Latino, Native American, or rural voters, many of whom lack reliable transportation or the resources to return a ballot in person. *See* Doc. 21 at ¶¶ 28, 29, 46.

On February 25, 2020, Plaintiffs filed a preliminary injunction motion substantiating and expanding upon the allegations set out in Plaintiffs' Second Amended Complaint. *See* Doc. 22. On April 14, 2020, Plaintiffs filed a supplemental brief highlighting the severity of this law during the pandemic. *See* Doc. 35. On March 20, 2020, the Secretary filed a Motion to Dismiss, arguing that Organizational Plaintiffs Voto Latino and Priorities USA lack standing, and that Plaintiffs have not stated a claim for relief. *See* Doc. 30. The Secretary's Motion is without merit.

## ARGUMENT

**I.   Plaintiffs have standing to challenge Arizona's Election Day Receipt Deadline.**

### A.   Legal Standard for Standing

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002) (citations and quotations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct" suffice to establish standing, because the Court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). Where injunctive relief is sought, "only one plaintiff with standing is required." *Crawford*, 472 F.3d at 951.

### B.   Plaintiffs Voto Latino and Priorities USA have alleged sufficient facts to support direct organizational standing.

The Secretary has not challenged Individual Plaintiff Aguallo's standing to bring this suit, nor could she. Plaintiff Aguallo is an Arizona voter who has previously been disenfranchised by the Election Day Receipt Deadline, and who faces a substantial risk of being disenfranchised by it again in upcoming elections. *See* Doc. 21 at ¶¶ 19-21; *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) ("plaintiff threatened with future injury has standing to sue . . .[if] there is a 'substantial risk that the harm will occur'") (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)). For that reason,

this action should proceed, regardless of the organizational plaintiffs' standing. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,* 547 U.S. 47, 52 n. 2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."). Indeed, it is well-settled that "[a]s a general rule, in an injunctive case this court need not address standing of each plaintiff if it concludes that one plaintiff has standing." *Nat'l Ass'n of Optometrists & Opticians Lenscrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009). Because Plaintiff Aguallo's standing is sufficient to carry this case forward, this Court need not engage in any additional standing inquiry.

Even if Plaintiff Aguallo did not have standing, the Secretary's challenge to the organizational Plaintiffs' standing would still fail. In the Ninth Circuit, organizations can establish direct standing by showing "(1) frustration of its organizational mission; and (2) diversion of its resources" to combat the effects of challenged law. *Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). Plaintiffs Voto Latino Foundation and Priorities USA have adequately alleged facts to support these elements.[1]

Specifically, Plaintiff Voto Latino Foundation alleges that its core mission is to "ensure that Latinos are enfranchised and included in the democratic process." Doc. 21 at ¶ 17. To further that mission, it engages in voter registration activities, get-out-the-vote campaigns, and voter education activities in Arizona to reach Voto Latino's core constituencies—Latino voters. *Id.* But the Election Day Receipt Deadline "frustrat[es] its mission of enfranchising and turning out Latino voters in Arizona because it burdens and disenfranchises the very voters that Voto Latino seeks to support." *Id.* "To turn out these voters and to combat the effects that Arizona's Election Day Receipt has on Latino voters," Voto Latino will have to "expend and divert additional funds and resources that it would otherwise spend on its efforts to accomplish its mission in other states or its own registration efforts in Arizona." *Id.*

Similarly, Plaintiff Priorities USA alleges its core mission is to persuade and

---

[1] Contrary to Defendant's characterizations, Plaintiffs have not claimed standing under any theory of associational standing in this suit.

1   mobilize American voters to support progressive movements. Doc. 21 at ¶ 18. In
2   furtherance of their mission, Priorities engages in voter education, voter mobilization, and
3   voter turnout activities across the country, including in Arizona. *Id.* The Election Day
4   Receipt Deadline frustrates Priorities' mission by "burden[ing] and disenfranchis[ing] the
5   voters Priorities supports through its work and contributions in Arizona." *Id.* "As a result,
6   Priorities has to expend and divert additional funds and resources in GOTV, voter education
7   efforts, mobilization, and turn-out activities in Arizona, at the expense of its voter support
8   initiatives in other states and other voter education and turnout programs in Arizona." *Id.*

9       These allegations firmly establish that the Election Day Receipt Deadline will
10   frustrate both organizations' missions and cause them to divert resources towards certain
11   activities in Arizona at the expense of their other programs or efforts in Arizona or other
12   states. At the pleading stage, this is sufficient to establish standing. *See Lujan*, 504 U.S. at
13   560-61; *see also Smith*, 358 F.3d at 1105-06 (holding that allegations that the organization
14   had "to divert scarce resources from [its] other efforts" in response to a law were sufficient
15   to show a diversion of resources at the motion to dismiss stage). Contrary to the Secretary's
16   assertions, Plaintiffs are not required to allege "how their current day-to-day activities
17   would be" different to establish organizational standing at this stage. Doc. 30 at 5. Rather,
18   the Ninth Circuit has explained that "a diversion-of-resources injury is sufficient to establish
19   organizational standing at the pleading stage, even when it is 'broadly alleged.'" *See Nat'l*
20   *Council of La Raza, v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) (citing *Havens Realty*
21   *Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

22       Moreover, it is of no consequence, as the Secretary argues, that Plaintiffs already
23   engage in voter education efforts to further their missions. In the Ninth Circuit, an
24   organization can show injury when it re-allocates organizational resources—even to
25   activities in which that organization already participates. In *National Council of La Raza*,
26   for example, plaintiffs that "regularly [] conducted" voter registration drives challenged
27   Nevada's ongoing violations of the National Voter Registration Act, alleging injury because
28   those violations required them to register more voters than they otherwise would need to,

taking "substantial resources" away from "other activities central to their missions." 800 F.3d at 1036, 1040. Because those diverted resources would have been spent on some other aspect of their organizational purpose, the Ninth Circuit explained that the "Plaintiffs have not alleged that they are simply going about their business as usual, unaffected by the State's conduct." *Id.* at 1040-41 (quotations omitted). Other cases in the Ninth Circuit stand for similar propositions. *See, e.g.*, *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 748 (9th Cir. 1991) (holding that an organization which represented clients in immigration court had standing to challenge a new immigration policy because the new policy required the organization to "expend resources in representing [those] clients [that] they otherwise would spend in other ways").

Here, Plaintiffs have alleged just that. Plaintiffs' Complaint establishes that the organizations will not continue to go about their usual activities, including voter education efforts, unaffected by the law. Instead, they have alleged that because of the law, they will have to "expend and *divert* additional resources" that they "would otherwise spend on," or "at the expense of," their other organizational activities, such as voter registration or voter persuasion campaigns. Doc. 21 at ¶¶ 17, 18.[2] These expenditures are not ones that either organization would "always incur," nor are they part of their "general operating expenses," or "manufactured." Doc. 30 at 5. Rather, the expenditures are plainly a diversion of resources and establish the organizations' standing to proceed at this stage. The Secretary's Motion should be denied on this ground.

## II.    The Amended Complaint sufficiently states claims for relief.

### A. Legal Standard for Dismissal

"Dismissal is proper under Rule 12(b)(6) if it appears *beyond doubt* that the non-movant can prove *no set of facts* to support its claims." *Ass'n for Los Angeles Deputy*

---

[2] Nor have Plaintiffs alleged "only backward-looking costs," as the Secretary contends. *See* Doc. 30 at 6. The Second Amended Complaint makes clear that Plaintiffs Voto Latino and Priorities USA will have to divert resources in the future in advance of upcoming elections should the Election Day Receipt Deadline remain in effect. *See* Doc. 21 at ¶¶ 17, 18.

1   *Sheriffs v. Cty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (citation omitted)

2   (emphases added). To clear this bar, the complaint must plead "enough facts to state a claim

3   to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

4   (2007). "'The motion to dismiss for failure to state a claim is viewed with disfavor and is

5   rarely granted.'" *Thompson v. Paul*, 657 F. Supp. 2d 1113, 1123 (D. Ariz. 2009) (quoting

6   *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)).

7
   **B.   Plaintiffs sufficiently allege that the Election Day Receipt Deadline inflicts
8         serious burdens on the right to vote not justified by state interests.**

9   The Secretary's contention that Plaintiffs have not sufficiently alleged an *Anderson-*

10  *Burdick* claim misunderstands the law and ignores the ample facts pleaded in Plaintiffs'

11  Complaint. Dismissal of Plaintiffs' *Anderson-Burdick* claim is not appropriate at the motion

12  to dismiss stage. The *Anderson-Burdick* analysis necessarily involves an intense factual

13  inquiry, requiring both discovery and a developed factual record.

14  Indeed, *Soltysik v. Padilla*, 910 F.3d 438 (9th Cir. 2018), forecloses dismissal at this

15  stage for that reason. In *Soltysik*, the Ninth Circuit reversed a district court's dismissal of an

16  *Anderson-Burdick* claim at the motion to dismiss stage because the district court could not

17  consider the challenged election law's justifications and burdens without a factual record.

18  *Id.* at 447 ("[W]ithout any factual record at this stage, we cannot say that the Secretary's

19  justifications outweigh the constitutional burdens on [plaintiff] as a matter of law."). The

20  Ninth Circuit instructed the district court to reassess the plaintiff's *Anderson-Burdick* claim

21  "with the benefit of a complete evidentiary record regarding both the burden [the challenged

22  law inflicted on the plaintiff] . . . and the interests of the State." *Id.* at 449. The same factual

23  development should result here—the Court cannot dismiss the Plaintiffs' *Anderson-Burdick*

24  claim without considering an evidentiary record demonstrating the magnitude of the burden

25  on the right to vote or else it will find itself "in the position of Lady Justice: blindfolded and

26  stuck holding empty scales." *Id.* at 450 (quotation omitted).[3]

27
   ───────────────
28          [3] Other courts have come to identical conclusions about motions to dismiss regarding

Tellingly, the Secretary has not cited a single case supporting dismissal of an *Anderson-Burdick* case at the pleading stage, relying instead on cases decided at other stages of litigation.[4] For example, the Secretary relies on *Short v. Brown*, 893 F.3d 671 (9th Cir. 2018), for the proposition that plaintiffs "may not state a claim under *Anderson/Burdick* by merely alleging that a given state statute or practice violates the right to vote." Doc. 30 at 7. But *Short*, which considered a preliminary injunction motion, does not stand for this proposition. In *Short*, the Ninth Circuit did not consider the sufficiency of plaintiffs' allegations; rather, it focused on whether plaintiffs had a likelihood of success on the merits. *See* 893 F.3d at 675. And unlike this case, *see* Doc. 21 at ¶ 2, the plaintiffs in *Short* had not alleged that the challenged law resulted in disenfranchisement nor had they provided any evidence that the law would prevent anyone from voting. *Short*, 893 F.3d at 677–78. On the contrary, the challenged law in *Short* "ma[de] it easier for some voters to cast their ballots by mail," which the court concluded imposed not even a moderate burden. *Id*. The Secretary also relies on *Arizona Libertarian Party v. Reagan*, but that case was decided on summary judgment after the development of factual record, not on a motion to dismiss. *See* 798 F.3d 723, 726 (9th Cir. 2015). As the Ninth Circuit explained in *Soltysik*, relying on summary-judgment decisions to determine whether a plaintiff has adequately alleges an *Anderson-Burdick* claim, "support[s], rather than undermine[s], [the] conclusion that further factual development is necessary and appropriate" for *Anderson-Burdick* claims. *Soltysik*, 910 F.3d

---

*Anderson-Burdick* claims. *See, e.g.*, *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008) (explaining, in reversing lower court's dismissal, that while plaintiffs offered little evidence about the burden that election law imposed, "[f]or our initial purposes, it is important only that there is at least some burden on the voter-plaintiffs' rights"); *One Wis. Inst., Inc. v. Nichol*, 155 F. Supp. 3d 898, 905 (W.D. Wis. 2015) ("Whether Wisconsin's restrictions have actually burdened Democratic voters, and if so, to what degree, is a question of fact that cannot be resolved at the pleading stage . . . . Here, plaintiffs have alleged facts that plausibly suggest that they are entitled to relief under the First and Fourteenth Amendments. Defendants' motion to dismiss this claim will therefore be denied.").

[4] The Secretary also relies on *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1377 (S.D. Fla. 2004), in which the Plaintiffs challenged Florida's deadline for absentee ballots. That case, however, was not resolved on a motion to dismiss, but on a preliminary injunction motion, meaning that the court in *Snipes* was not asked to consider the *sufficiency* of the plaintiffs' claims, but the likelihood of their merit. Moreover, *Snipes* was filed on Election Day itself, and thus without a meaningful record for the court to review.

at 449. So too here. Just as it was in *Soltysik*—and has been in other cases to consider this question as well—factual development is necessary, and the Secretary's Motion must be denied.

The facts that Plaintiffs have alleged regarding the burden on voters and state interest are more than sufficient at this stage. *First*, Plaintiffs have sufficiently alleged that the Election Day Receipt Deadline poses severe burdens on the right to vote. As alleged, the law results in the disenfranchisement of thousands of Arizona voters each year. Doc. 21 at ¶¶ 32, 35. At least 3,000 voters in 2018, 4,100 in 2012, and 1,600 in 2008 were disenfranchised only because their ballots arrived after the Election Day Receipt Deadline. *Id*. And the late arrival was through no fault of their own. *Id*. at ¶¶ 47, 51. The mail system in Arizona, particularly in rural areas, is not reliable. *Id*. at ¶ 46; *see also id*. (discussing lack of mailboxes, personal mail delivery services, and extensive travel undertaken to receive or send mail); *id.* at ¶ 50 (discussing challenges faced by urban, predominantly minority voters with mail). And many voters receive inconsistent, or even incorrect advice, on when to mail their ballots. *Id*. at ¶¶ 33–35, 54. These burdens are all but certain to increase as the COVID-19 crisis continues, and as Arizona voters are increasingly required to rely on the mail to cast their ballots. *See generally* Doc. 32.

Courts throughout the country have recognized that disenfranchisement, even for a comparatively small number of people, imposes severe burdens on voting rights. *See, e.g.*, *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 244 (4th Cir. 2014) ("[T]he basic truth that even one disenfranchised voter—let along several thousand—is too many."), *cert. denied*, 135 S. Ct. 1735 (2015); *Anderson v. Celebrezze*, 460 U.S. 780, 784-86 (1983) (holding unconstitutional a filing deadline that affected candidates who received less than 6% of statewide vote); *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 666 (1966) (observing that poll taxes, even if it not burdensome for the average voter, violate Fourteenth Amendment of U.S. Constitution because of burdens they impose on poor voters); *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 593 (6th Cir. 2012) (law likely unconstitutional even though it affected only 0.248% of total ballots cast). And

burdens on voting rights are especially serious when voters are harmed through no fault of their own. *See Husted*, 696 F.3d at, 597 (holding that an Ohio law that rejected ballots cast in the wrong precinct but the correct polling place solely because of poll worker error imposed "substantial" burdens on voters).

For those same reasons, the Secretary's arguments that the Election Day Receipt Deadline is not burdensome because a large percentage of voters are able to comply with it and because other states have similar laws are not persuasive. The Supreme Court has emphasized that when assessing the severity of the burden, courts must consider the effects of the restriction on those voters who are actually impacted by the law. *See, e.g.*, *Crawford*, 553 U.S. at 198, 201 (controlling op.) (explaining that "[t]he burdens that are relevant to the issue before us are those imposed on persons who are eligible to vote but do not possess a [photo ID]," not the burdens on all voters); *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 n.2 (9th Cir. 2016) (finding that courts should consider "not only a given law's impact on the electorate in general, but also its impact on subgroups, for whom the burden, when considered in context, may be more severe."). That some voters can comply with the Election Day Receipt Deadline, or that other states also have such deadlines, is therefore of no importance to the determination that this Court must make here—i.e., how are the Arizona voters who are disenfranchised by this law burdened—and is certainly insufficient to warrant dismissal at the pleading stage.[5]

States' election laws are also not fungible. For example, state voter ID laws are not universally constitutional or unconstitutional—instead, each state's law must be considered individually, taking into account the burden on *that state's* voters. *See, e.g.*, *Ohio State Conference of N.A.A.C.P. v. Husted*, 768 F.3d 524, 547 n.7 (6th Cir. 2014), ("[W]e do not

---

[5] In particular, Plaintiffs have alleged not only that the law imposes burdens on all voters who vote by mail, but that it poses particular burdens on Hispanic and Latino voters, Native American voters, and rural voters, who are not only disenfranchised at a disproportionate rate, but are more likely to be subject to slower mail and circuitous postal routes, lack home postal delivery, or even lack access to a post office. *See* Doc. 21 ¶¶ 46–55. Thus, the burden on these voters specifically, not just the burden on all voters generally must be evaluated.

find that other states' electoral laws and practices are relevant to our assessment of the constitutionality or legality" of Ohio law), *vacated on other grounds*, No. 14-3877, 2014 WL 10384647 (6th Cir. Oct. 1, 2014). And, just a few weeks ago, in the context of COVID-19, the U.S. Supreme Court, evaluating a district court's decision under *Anderson-Burdick*, allowed a district court's determination that an Election Day Receipt Deadline was unconstitutional to stand. *See Republican Nat'l Comm.*, 2020 WL 1672702. While other states may have Election Day Receipt Deadlines, much like the law in *Republican National Committee*, that does not mean that they are constitutional, nor does it mean that Arizona's Election Day Receipt Deadline is constitutional. Their existence says nothing about the strength or sufficiency of Plaintiffs' pleadings.

*Second*, Plaintiffs have also sufficiently alleged that the state has no adequate interest in the Election Day Receipt Deadline. *See* Doc. 21 at ¶¶ 43, 65-66. Not only, as explained, is this inherently a factual determination, *Soltysik*, 910 F.3d at 447, but many of the justifications identified by the Secretary are refuted in Plaintiffs' Complaint. *See* Doc. 21 at ¶¶ 5-6. For instance, while the Secretary asserts an interest in a clear deadline, Doc. 30 at 12, Plaintiffs' proposed deadline to mail ballots is also clear—that is, by Election Day. Indeed, if anything, Plaintiffs' proposed deadline is clearer than Arizona's current deadline to mail ballots, which varies by county and is, in the Secretary's own words, "imprecise," Doc. 30 at 10.  Likewise, while the Secretary asserts an interest having a "known universe of ballots to process," Doc. 30 at 12, Plaintiffs have already alleged that the ballot count is not final, and results are not tallied until days after Election Day. *See* Doc. 21 at ¶¶ 5-6. Nor does the Deadline advance the Secretary's interest in preventing voter confusion, Doc. 30 at 12, because, as Plaintiffs allege, voters have a reasonable expectation that it is the postmark on mail that makes it timely. *See* Doc. 21 at ¶ 4. Plaintiffs have pleaded sufficient facts to demonstrate that the justifications set forth by the State are inadequate, and their Complaint should survive a motion to dismiss.

Finally, contrary to the Secretary's argument, Plaintiffs' challenge is not merely a policy debate; it is a concrete claim of direct harm that is wholly appropriate for judicial

review. Courts have regularly held that election deadlines must give way for voters to have their votes cast and counted when a state's laws prevent otherwise valid votes from being counted, making it clear that claims similar to Plaintiffs' regularly withstand a motion to dismiss. In the context of the Uniformed and Overseas Citizens Absentee Voting Act, for example, courts have extended ballot-receipt deadlines. One district court engaged in an *Anderson-Burdick* analysis and extended the deadline for receiving countable overseas ballots by ten days, observing that the initial deadline imposed a "severe burden" on overseas voters. *Doe v. Walker*, 746 F. Supp. 2d 667, 677 (D. Md. 2010). Another federal court ordered Virginia to "count as validly-cast all timely-requested absentee ballots received within thirty days of the close of the polls on November 4, 2008, so as to uphold and give meaning to the dearest of individual rights." *United States v. Cunningham*, No. 3:08cv709, 2009 WL 3350028, at *4 (E.D. Va. Oct. 15, 2009). And just this past month, as noted, a federal court in Wisconsin extended the deadline for voters to send in their absentee ballots because voters faced disenfranchisement from the state's receipt deadline in light of the current COIVD-19 public health crisis. *See Democratic Nat'l Comm. v. Bostelmann*, 20-cv-249, 2020 WL 1638374, at *12 n.14 (W.D. Wis. Apr. 2, 2020) (explaining that "[the state] cannot enforce laws that, even due to circumstances out of its control, impose unconstitutional burdens on voters"). While the Secretary tries to recast Plaintiffs' constitutional claims as a policy debate over an arbitrary deadline, *see* Doc. 30 at 15, there is ample precedent of judicial review of analogous deadlines—and courts ordering deadlines to change to ensure that voters' ballots are counted when voters stand to be disenfranchised.

## C.  Plaintiffs sufficiently allege that the Election Day Receipt Deadline violates the Procedural Due Process Clause.

Plaintiffs have also sufficiently alleged that the Election Day Receipt Deadline violates the procedural due process clause of the Fourteenth Amendment. *See* Doc. 21 at ¶¶ 66-76. As an initial matter, the Secretary erroneously states that procedural due process claims are reviewed under *Anderson-Burdick*. *See* Doc. 30 at 14. This is not the standard.

The case the Secretary cites to support this standard, *Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir. 2011), involved an appeal from a substantive due process claim. *See Dudum v. City & Cty. of S.F.*, No. C 10-00504 RS, 2010 WL 3619709, *15 (N.D. Cal. Sept. 9, 2010) ("Plaintiffs argue San Francisco's three choice limitation has substantive due process implications."). These two types of due process claims are distinct: A substantive due process claim challenges actions the government cannot take no matter how many procedures are in place, while a procedural due process claim challenges a deprivation of a life, liberty, or property interest "without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *see also Oceanside Golf Inst., Inc. v. City of Oceanside*, Nos. 88-5647, 88-6056, 1989 WL 61771, at *4 (9th Cir. June 1, 1989) ("[T]he analysis of a procedural due process claim differs in several respects from the analysis of a substantive due process claim."). Because Plaintiffs have brought a procedural due process claim, not a substantive due process claim, the argument set out in the Secretary's brief regarding due process is inapplicable.

Plaintiffs have also sufficiently pleaded this claim under the correct standard. Courts engage in a three-step inquiry in analyzing procedural due process claims. *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). *First*, courts consider "the nature of the interest that will be affected by the official action, and in particular, to the 'degree of potential deprivation that may be created.'" *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1192–93 (9th Cir. 2015) (quoting *Mathews*, 424 U.S. at 341). *Second*, "courts must consider the 'fairness and reliability' of the existing procedures and the 'probable value, if any, of additional procedural safeguards.'" *Id*. at 1193 (quoting *Mathews*, 424 U.S. at 343). *Third*, "courts must assess the public interest, which 'includes the administrative burden and other societal costs that would be associated with additional or substitute procedures." *Id*. (quoting *Mathews*, 424 U.S. at 347).

Here, Plaintiffs have alleged the interest affected by the Election Day Receipt Deadline is the liberty interest in voting and in having one's voted counted, which cannot be "confiscated without due process." *Raetzel v. Parks/Bellemont Absentee Election Bd.*,

762 F. Supp. 1354, 1357 (D. Ariz. 1990); *see also Zessar v. Helander*, No. 05C1917, 2006 WL 642646, at *6 (N.D. Ill. Mar. 13, 2006) (recognizing voting as a liberty interest); *United States v. Texas*, 252 F. Supp. 234, 250 (W.D. Tex. 1966), *aff'd*, 384 U.S. 155 ("[I]t cannot be doubted that the right to vote is one of the fundamental personal rights included within the concept of liberty as protected by the due process clause.").[6]

*Second*, Plaintiffs have asserted that Arizona's Election Day Receipt Deadline is neither fair nor reliable. Even though Arizona's vote-by-mail system works for many of the Arizonans who cast mail-in ballots, *see* Doc. 21 at ¶ 1, the Deadline results, as Plaintiffs allege, in thousands of ballots not being counted because of the timing of their arrival. *See* Doc. 21 at ¶ 32. The procedure to vindicate the fundamental liberty interest in voting is currently left to a voter's guesswork on mail delivery times and varies depending the voter's location within the state, *see id.* at ¶¶ 33, 35, a method that even the Secretary admits is "imprecise." Doc. 30 at 10. Then, if a voter's ballot arrives after the Deadline and is not counted, "the election procedures do not give some form of post-deprivation notice to the affected individual so that any defect in eligibility can be cured and the individual is not continually and repeatedly denied so fundamental a right." *Raetzel*, 762 F. Supp. at 1358. The Election Day Receipt Deadline disenfranchises voters each election because of the absence of post-deprivation notice to voters that their ballot was not counted. *See id.* ("The disqualified voter may never ascertain the justification for the rejection of their vote in order to cure the defect for future eligibility.").

Finally, Plaintiffs have alleged that because none of these procedures are fair or reliable, voters would substantially benefit from additional safeguards. *See* Doc. 21 at ¶ 74. In another vote by mail challenge, this Court recognized that "[w]hile the state is able to regulate absentee voting, it cannot disqualify ballots, and thus disenfranchise voters,

---

[6] The Secretary implies that this Court need not meticulously examine Arizona's procedures for voting by mail because Arizona is not required to offer this option to voters. *See* Doc. 30 at 7-8. But "a voter has a sufficient liberty interest once 'the State permits voters to vote absentee.'" *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 215 (D.N.H. 2018) (quoting *Zessar*, 2006 WL 642646, at *5).

without affording the individual appropriate due process protection." *Raetzel*, 762 F. Supp. at 1358. Here, Plaintiffs are seeking a reasonable extension for otherwise valid ballots to be received and counted. *See* Doc. 21 at ¶ 75. Not only would the public interest benefit from Plaintiffs' proposed substitute procedures but, as alleged, these procedures would involve very little administrative burden on Arizona. *Id.* Plaintiffs have thus adequately alleged a deprivation of their procedural due process rights.

## CONCLUSION

For the reasons stated above and based on the allegations of the Second Amended Complaint, Plaintiffs respectfully request that this Court deny the Secretary's Motion to Dismiss on all grounds.

Dated: April 20, 2020

*s/ Amanda R. Callais*

Alexis E. Danneman (# 030478)
Sarah R. Gonski (# 032567)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788

Marc E. Elias*
John Devaney*
Amanda R. Callais*
K'Shaani O. Smith*
Zachary J. Newkirk*
Christina A. Ford*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005-3960

*Admitted pro hac vice*

*Attorneys for Plaintiffs*

16

1

**CERTIFICATE OF SERVICE**

2
3
I hereby certify that on April 20, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

4
5
<u>s/    Amanda R. Callais</u>

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28